UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-12153-RWZ

UNITED STATES OF AMERICA *ex rel.*
JAMES BANIGAN AND RICHARD TEMPLIN, *et al.*

v.

ORGANON USA INC., *et al.*

MEMORANDUM OF DECISION

January 9, 2013

ZOBEL, D.J.

Relators, James Banigan and Richard Templin, served a subpoena duces tecum upon non-party Texas Office of the Attorney General (the "Texas OAG") requesting information obtained in connection with a confidential Medicaid fraud investigation of defendants. The Texas OAG now moves under Fed. R. Civ. P. 45 to quash the subpoena (Docket # 212).

**I. Background**

On September 13, 2007, relators brought this qui tam action on behalf of the United States of America, twenty-seven states,[1] the District of Columbia, and the City of Chicago under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and various state and local false claims statutes, alleging claims of Medicaid fraud against

---

[1] California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, and Wisconsin.

defendants Organon Biosciences N.V., Organon USA, Inc., Organon Pharmaceuticals USA, Inc., Organon International, Inc., Schering Plough Corp., Merck & Co., Inc. (collectively, "Organon" or "the Organon defendants"), Omnicare, Inc. ("Omnicare"), and PharMerica, Inc. ("PharMerica").[2]  Specifically, relators claim that from 1996 to 2006, defendants – pharmaceutical companies and long-term care pharmacies – engaged in fraudulent kickback schemes relating to the sale and marketing of Organon's Remeron antidepressants.

After being served with relators' action, the Texas OAG initiated a confidential investigation pursuant to the Texas Medicaid Fraud Prevention Act ("TMFPA"), TEX. HUM. RES. CODE §§ 36.011-36.132, which authorizes the Texas OAG to gather information from other Texas state agencies, issue Civil Investigative Demands ("CIDs"), and conduct Examinations Under Oath ("EUOs").  During its investigation, the Texas OAG issued CIDs to defendants and conducted EUOs of several witnesses.[3]

On or about October 26, 2012, relators served the Texas OAG with a Rule 45 subpoena seeking information it obtained in connection with the TMFPA investigation. The subpoena requests four main categories of information:

(1) CID materials: All materials obtained from defendants Omnicare and PharMerica in response to CIDs;

(2) EUO materials: Documents relating to EUOs conducted by the Texas OAG in

---

[2] Akzo Nobel N.V. was also initially named a defendant, but was dismissed for lack of personal jurisdiction (Docket ## 167-68)

[3] Texas, along with several other states, declined to intervene in the action on October 5, 2010.

connection with the U.S. government's and Texas' civil investigation of defendants;

(3) Correspondence: All correspondence between Omnicare and/or PharMerica and the U.S. government and/or Texas related to the government's and Texas's civil investigations of Omnicare and related entities;

(4) Remeron data: Specific fields of data in connection with pharmacy claims from 1999 to 2006 for Medicaid reimbursement of Organon's drug Remeron, as well as documents reflecting the receipt of any supplemental rebates received for Remeron by Texas from 1999 to 2006.

The Texas OAG timely served its objections on November 5, 2012, and had several discussions thereafter with relators' counsel regarding the scope of the subpoena.  Relators indicated that they would not seek to enforce the subpoena with respect to the Remeron data at this time and would instead request such information directly from defendants.  Moreover, on November 27, 2012 – one day after the Texas OAG filed its motion to quash – relators sent a letter to the Texas OAG stating that they would also presently refrain from enforcing the subpoena's requests for CID materials and correspondence.  Thus, relators currently seek to enforce only production of the EUO materials.  Nonetheless, because relators have not withdrawn the remaining requests but have reserved the right to pursue them in the future, the Texas OAG still seeks to quash the subpoena in its entirety.

## II. Discussion

The Texas OAG moves to quash the subpoena on the grounds that it was improperly served, seeks material that is privileged, requests information not relevant

to relators' allegations, and is unduly burdensome.

As an initial matter, the subpoena was not served in accordance with Fed. R. Civ. P. 45 and is therefore unenforceable.  Rule 45(b)(2) provides that a non-party subpoena may be served at any place outside the issuing district "but within 100 miles of the place specified for deposition, hearing, trial, production, or inspection."  Here, the subpoena was issued from the District of Massachusetts and designates relators' counsel's office at 75 Federal Street in Boston, Massachusetts, as the place for production.  The Texas OAG was served with the subpoena in Austin, Texas, well beyond the issuing district and the 100-mile bulge prescribed by Rule 45.  "As a general rule, a subpoena served outside the issuing court's jurisdiction is without legal force."  9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 45.22 (3d ed. 2012).  See also, U.S. Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988) ("the subpoena power of a court cannot be more extensive than its jurisdiction"); Eli Lilly & Co. v. Gottstein, 617 F.3d 186, 187 (2d Cir. 2010) ("the subpoenas duces tecum issued through the Alaskan state court were presumably without legal force in Massachusetts, where [the recipient] resided and was served.").

Relators insist that the subpoena was properly served because the Federal Rules of Civil Procedure do not apply to production of documents through a subpoena when a federal statute provides otherwise, Fed. R. Civ. P. 81(a)(5), and the FCA authorizes service of a subpoena at any place in the United States, 31 U.S.C. § 3731(a).  However, the relevant section of the FCA refers only to subpoenas "requiring *the attendance of a witness* at a trial or hearing conducted under section 3730 of [the

4

FCA]," 31 U.S.C. § 3731(a) (emphasis added), and says nothing about nationwide service of subpoenas seeking only the production of documents. The FCA does not discharge any duty of relators to comply with Rule 45 service provisions with respect to the subpoena at issue here. Thus, the subpoena is invalid and must be quashed.[4]

Even if the subpoena were properly served, I agree with the Texas OAG that it "requires disclosure of privileged or other protected matter" to which no exception or waiver applies and must be quashed pursuant to Fed. R. Civ. P. 45(c)(3). All of the documents sought by relators, including the EUO materials, were obtained during the course of the Texas OAG's confidential Medicaid fraud investigation. The TMFPA, in addition to authorizing the Texas OAG to gather information from other Texas state agencies, issue CIDs, and conduct EUOs, forbids disclosure of any information thereby obtained

> except: (1) by court order for good cause shown; (2) with the consent of the person who provided the information; (3) to an employee of the attorney general; (4) to an agency of [Texas], the United States, or another state; (5) to any attorney representing [Texas] under Section 36.055 [of the TMFPA] or in a civil action brought under Subchapter C [of the TMFPA][5]; (6) to a political subdivision of [Texas]; or (7) to a person authorized by the attorney general to receive the information.

TEX. HUM. RES. CODE ANN. § 36.053(c) (2005). See also id. §§ 36.003(b); 36.054(e). The Texas OAG previously shared certain CID documents received from Organon with

---

[4] Relators also cite to Rule 45(b)(2)(D), which permits a subpoena to be served at any place "that the court authorizes on motion and for good cause, if a federal statute so provides." As already discussed, the FCA does not provide for nationwide service of a subpoena duces tecum, and relators have not demonstrated good cause for overriding the geographic restrictions of Rule 45.

[5] The Texas OAG notes, and relators do not contradict, that this particular exception applies only to contracted attorneys representing Texas, not to counsel for relators bringing qui tam claims on behalf of the state.

relators pursuant to the exception in § 36.054(e)(7)[6] and subject to a protective order, but has not made any such arrangements with relators regarding the other requested information. Nor have relators shown good cause for a court order for disclosure under TMFPA § 36.053(e)(1) or demonstrated that some other exception applies.

Moreover, the Texas Government Code further prohibits the disclosure of any information obtained in a Medicaid fraud investigation:

> All information and materials subpoenaed or compiled by the [Texas OAG] in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation *are confidential and . . . not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release* to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by other law.

TEX. GOV'T CODE ANN. § 531.1021 (2011) (emphasis added). The statute flatly bars discovery, including via subpoena, of Medicare fraud investigation materials gathered by the Texas OAG. Relators nevertheless argue that they qualify for the exception as "other entities" who are "permitted by other law," namely the Federal Rules of Civil Procedure, to obtain the investigatory information. Relators offer no support for that conclusion; indeed, their reading of this provision to permit disclosure to a litigant through a civil discovery request, despite the statute's explicitly articulated protection from "disclosure, discovery, [or] subpoena," defies both logic and the plain text of the law. As the Texas OAG points out, the exception appears to contemplate disclosure in

---

[6] "The office of the attorney general may not produce for inspection or copying or otherwise disclose the contents of documentary material obtained under this section except: . . . (7) to a person authorized by the attorney general to receive the information."

6

the specific context of an investigation, with "other entities" being agencies or investigative bodies not unlike the state auditor's office or law enforcement agencies. That is not the case here.

Relator's subpoena was improperly served, and all the information sought is protected from disclosure by Texas law and not subject to discovery.[7]  It is unnecessary to consider the Texas OAG's additional arguments regarding irrelevance and undue burden.  The subpoena will be quashed in its entirety.

### III. Conclusion

Non-party Texas OAG's motion to quash (Docket # 212) is ALLOWED.


        January 9, 2013                             /s/Rya W. Zobel
           DATE                                    RYA W. ZOBEL
                                         UNITED STATES DISTRICT JUDGE

---

[7] The Texas OAG claims that some of the information sought by the subpoena, most notably the Remeron data, may contain protected health information of individual Medicaid recipients and is therefore prohibited from disclosure by the Federal Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996), unless relators make satisfactory assurances that they have made reasonable efforts to notify the individuals who are the subject of the information or secure a qualified protective order.  45 C.F.R. § 164.512(e)(1)(i)(A)-(B).  The Texas OAG also asserts that correspondence materials requested by the subpoena are privileged under the attorney work-product doctrine, Fed. R. Civ. P. 26(b)(3).  As already noted, relators are not currently seeking to enforce the subpoena with respect to the Remeron data or correspondence, and in any case, both categories of information are protected from disclosure as the fruit of the Texas OAG's Medicaid fraud investigation.